THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WOJOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 2725 |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| | ) | Magistrate Judge Maria Valdez |
| OFFICER DWIGHT CRULL, No. 336 and | ) | |
| OFFICER JOSEPH MARIGLIANO, No. 318, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COME the defendants, Dwight Crull and Joseph Margliano, by their attorneys, Litchfield Cavo LLP, and pursuant to FRCP 50(a), move this Court for entry of an order granting them judgment as a matter of law as to Count I of the plaintiff's complaint. In support thereof, the defendants state as follows:

**I.    INTRODUCTION**

This action arises out of an incident that occurred on April 7, 2005, in Orland Hills, Illinois. The plaintiff filed a three-count complaint in which he alleged a violation of Section 1983 (Count I), as well as state law claims of battery and false imprisonment (Counts II and III, respectively). On August 19, 2008, this court entered an order dismissing Counts II and III with prejudice. The remaining count appears to seek relief for both excessive force and false arrest. Defendants are entitled to judgment as a matter of law, inasmuch as Wojowski has failed to establish the prima facie elements of either cause of action. Additionally, the defendants are entitled to protections afforded by qualified immunity, and thus Count I should be dismissed.

## II. TO THE EXTENT THAT COUNT I SEEKS RELIEF FOR FALSE ARREST, THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

To establish a prima facie case in a Section 1983 action based on an officer's unlawful arrest, a plaintiff must prove by a preponderance of the evidence that his arrest was carried out in the absence of probable cause. *Shertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). The existence of probable cause for an arrest is an absolute bar to a Section 1983 claim for false arrest. *Id*. Precedent teaches that the effect of a finding of probable cause is not limited to the exact offense which matches the finding of probable cause. *Kelley v. Myler*, 149 F.3d 641 (7th Cir. 1998), *Biddle v. Martin*, 992 F.2d 673, 676 (7th Cir. 1993). Instead, proof of probable cause to arrest the plaintiff on a closely related charge is also a defense to a Section 1983 suit based on probable cause. *Kelley v. Mylar*, 149 F.3d 641 (7th Cir. 1998). The existence of probable cause to arrest an individual for resisting arrest bars a Section 1983 claim for false arrest on closely related charges such as battery and disorderly conduct. See *DuFour v. Cogger*, 969 F.Supp. 1107, 1112 (N.D.Ill. 1997).

Here, it is undisputed that Mr. Wojowski was arrested for both battery to a police officer and resisting arrest. Wojowski admitted during both his deposition, and at trial that he resisted arrest (See page 106-107 of Wojowski's deposition testimony). He also admitted that once he was told he was under arrest, he assumed "a fetal position" and placed his arms across his chest. Finally, the plaintiff concedes that he refused to place his arms behind his back and otherwise interfered with the officers as they attempted to handcuff him. In short, Wojowski has admitted there was probable cause to arrest him for the offense of resisting arrest. As result, this Court should enter judgment as a matter of law in favor of the defendants as to Wojowski's false arrest claim.

## III. ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO WOJOWSKI'S FALSE ARREST CLAIM.

The defendants raised a number of affirmative defenses, including qualified immunity. In determining whether an official is entitled to qualified immunity, the court conducts a two-step inquiry: First, the Court must determine whether the conduct alleged violates plaintiff's constitutional rights; second, the court must determine whether that right was clearly established at the time of the alleged violation. *Wernsing v. Thompson*, 423 F.3d 732, 742 (7th Cir. 2005); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Typically, the threshold question is posed in the following manner: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer violated a constitutional right? *Saucier*, 533 U.S. at 202. In deciding whether a right is clearly established, the relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted. *Payne v. Pauley*, 337 F.3d 767, 775-76 (7th Cir. 2003). A right is not clearly established if officers of reasonable competence could disagree on the issue. *Hinnen v. Kelly*, 992, F.2d 140, 142-43 (7th Cir. 1993).

Even if the plaintiff's testimony and version of the incident is accepted as true, the conduct he attributes to the defendants did not violate his right to be free from false arrest. According to the plaintiff, immediately after he was told he was going to be arrested, he assumed a "fetal position" and held his arms across his chest. He refused to place his arms behind his back so that he could be handcuffed. He admitted that the officers told him several times to place his hands behind his back, but nevertheless refused to comply with their orders. Wojowski's own testimony shows that the officers did not violate his constitutional rights when they placed him under arrest. As a result, his false arrest claim should be dismissed with prejudice.

Yet even if Wojowski somehow shows that a constitutional right was violated, he is unable to show that the constitutional right in question was clearly established at the time he was arrested. The relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the defendants confronted. Even when viewed in the light most favorable to the plaintiff, the evidence introduced in his case in chief shows that a reasonable officer would believe that Wojowski resisted arrest. Confronted with an individual who assumed a fetal position and refuse to place his arms behind his back, a reasonable officer would conclude that the individual in question had committed the offense of resisting arrest. Accordingly, defendants are entitled to qualified immunity.

At the very least, defendants had "arguable probable cause" to arrest Wojowski. To receive qualified immunity protection, and officer need not have actual probable cause, but only "arguable probable cause." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Arguable probable cause exists when a reasonable officer faced with the same circumstances and equipped with the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. *Id*. Accordingly, even if probable cause is lacking with respect to an arrest, notwithstanding an officer's subjective belief that he had probable cause, he is entitled to qualified immunity so long as his subjective belief was objectively reasonable. *Edwards v. Cabrera*, 53 F.3d 290, 293 (7th Cir. 1995). Informed that he was about to be arrested, Mr. Wojowski assumed a fetal position and absolutely refused to cooperate with the officers as they attempted to handcuff him. Confronted with this behavior, a reasonable officer could reasonably believe that the plaintiff was refusing to cooperate and was attempting to avoid arrest or interfere with the officers as they attempted to place him in custody. Put simply, defendants' belief that Wojowski was resisting arrest may have been subjective, but it

4

was objectively reasonable. Since defendants' decision to arrest Wojowski for resisting arrest was based on probable cause, plaintiff's false arrest claim should be dismissed with prejudice.

**IV.  THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFF'S EXCESSIVE FORCE CLAIM**

An excessive force claim which arises in the context of an arrest or investigatory stop invokes the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable... seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The reasonableness of a particular seizure depends not only on when it is made, but also on how it is carried out. *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. In assessing the reasonableness of an officer's conduct, the court must acknowledge the fact that police officers are often "forced to make split second judgments in circumstances that are tense, uncertain and rapidly evolving" about the amount of force is necessary in a particular situation. *Id*. With respect to excessive force claims, the Supreme Court has recognized that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396.

Even when viewed in the light most favorable to the plaintiff, the evidence introduced in his case in chief demonstrates his inability to establish the elements of his excessive force claim. Likewise, defendants are entitled to judgment as a matter of law if the court accepts as true Wojowski's version of the incident. Wojowski admits that he resisted arrest and refuse to comply with the officers' lawful orders. Illinois law provides that an individual may not resist arrest, and may not use force to resist arrest even if the arrest is unlawful and is in fact, unlawful.

720 ILCS 5/7-7. Told that he was going to be placed under arrest, Wojowski decided to assume "a fetal position." He held his arms tightly across his chest and refuse to place them behind his back, despite the officers' repeated directions. Wojowski admits that he was not punched or slapped, but simply claims that the officers "treated him like a rag doll." Since Mr. Wojowski has conceded that he resisted arrest and refused the officers' directions, the force which he claims was used against him was not objectively unreasonable. Accordingly, defendants are entitled to judgment as a matter of law as to Wojowski's excessive force claim.

V. **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO WOJOWSKI'S EXCESSIVE FORCE CLAIM**

As was stated above, in determining whether an official is entitled to qualified immunity, the court must first determine whether the conduct alleged violated plaintiff's constitutional rights, and then the court must determine whether that right was clearly established at the time of the alleged violation. See *Wernsing* cited supra. Viewed in the light most favorable to Wojowski, the evidence introduced in his case in chief does not show that defendants violated a constitutional right. Wojowski admitted that he resisted arrest and refused to comply with the officers' directions and instructions. As a result, the officers had no choice but to use force to take him into custody. The force used, pepper spray and grabbing the plaintiff's arms and placing them behind his back, was not objectively unreasonable and did not violate the Fourth Amendment.

Yet even if a constitutional right was somehow violated, the plaintiff is unable to satisfy the second prong of the qualified immunity analysis. The question here is whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted. Told that he was to be arrested, Wojowski claims that he immediately assumed a "fetal position" and held his arms tightly across his chest. He admits that he refused to place his

arms behind his back and otherwise refused to comply with the directions and instructions given to him by the officers. Faced with this obvious noncompliance, a reasonable officer could conclude that using pepper spray and grabbing hold of the plaintiff's arms and placing them behind his back was not unlawful. Accordingly, defendants are entitled to qualified immunity and plaintiff's excessive force claim should be dismissed.

Respectfully submitted,

LITCHFIELD CAVO, LLP.

Patrick J. Ruberry, Esq. (06188844)
LITCHFIELD CAVO, LLP
303 West Madison Street , Suite 300
Chicago, IL 60606-3300     By:    /s/ Patrick J. Ruberry
(312) 781-6677                                   Attorneys for the Defendants,
(312) 781-6630 fax                       Officer Dwight Crull and
                                                                      Officer Joseph Marigliano

**CERTIFICATE OF SERVICE**

I, the undersigned, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing Defendants' Rule 50(a) Motion for Judgment as a Matter of Law by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on the 26th day of August, 2008.

|  |  |
|---|---|
|  | /s/ Patrick J. Ruberry |
| Patrick J. Ruberry, Esq. (06188844) | Attorneys for the defendants, |
| LITCHFIELD CAVO, LLP | Officer Dwight Crull and |
| 303 West Madison Street , Suite 300 | Officer Joseph Marigliano |
| Chicago, IL 60606-3300 |  |
| (312) 781-6677 |  |
| (312) 781-6630 fax |  |


Exhibit A

```
 1      A. Nothing except for having surgery, and then I
 2   can't fully extend my arm.
 3      Q. Well, did you resist the officers as they
 4   attempted to put your arms behind your back?
 5      A. I protected myself.
 6      Q. How did you protect yourself?
 7      A. By holding my arms in close in the fetal
 8   position.
 9      Q. But you understand if you're going to be
10   arrested, it's necessary that you be handcuffed,
11   correct?
12      A. Yeah, but I wasn't being arrested for -- under
13   what?
14      Q. Is it your contention, sir, you have a right to
15   resist arrest?
16      A. No.
17      Q. But you were resisting arrest, weren't you?
18      A. Yes.
19      Q. The officers had to force your arms behind your
20   back because you refused to place your arm behind your
21   back, isn't that true?
22      A. Yes.
23      Q. So they had to use some degree of force in order
24   to get your arms behind your back, correct?
```

1   A. Yes.
2   Q. Did you feel any difference between -- Strike
3 that.
4       Do you know which arm Officer Marigliano
5 allegedly grabbed?
6   A. No. I was blinded. I couldn't see who was on
7 what arm.
8   Q. Could you describe how the officers placed your
9 arms behind your back?
10   A. Roughly.
11   Q. When you use the term "roughly," what do you
12 mean?
13   A. Like a rag doll, threw me around like a rag doll.
14   Q. When you say they threw you around like a rag
15 doll, what did they do? They picked you up and dropped
16 you on the ground? Did they throw you up in the air?
17 What did they do?
18   A. I know I was thrown down to the ground. It's
19 kind of hard to --
20       MR. MEYER: Just do the best you can do.
21       THE WITNESS: I couldn't see. I was
22 Maced.
23 BY MR. RUBERRY:
24   Q. But you weren't already on the ground when the